UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA CARR,

        Petitioner,                         Civil Action Number: 2:09-cv-12904

v.                                     Honorable Arthur J. Tarnow

GREG MCQUIGGIN,

        Respondent.
_____/

**OPINION AND ORDER DENYING
PETITION FOR A WRIT OF HABEAS CORPUS AND GRANTING
IN PART A CERTIFICATE OF APPEALABILITY AND
DECLINING IN PART TO ISSUE A CERTIFICATE OF APPEALABILITY**

**I. INTRODUCTION**

This is a habeas case filed by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner

Joshua Carr is a Michigan prisoner currently incarcerated by the Michigan Department of

Corrections at the Carson City Correctional Facility in Carson City, Michigan. He filed this

habeas petition, through counsel, challenging his 2006 jury convictions for first-degree home

invasion, assault with intent to do great bodily harm less than murder, and felony firearm, which

occurred in the Circuit Court in Genesee County, Michigan. After a six-day trial, on August 16,

2006, the jury found Petitioner guilty but mentally ill. On September 20, 2006, he was

sentenced, as a third-offense habitual offender, to concurrent prison terms of four to twenty years

for the assault conviction and ten to forty years for the home-invasion conviction. Those

sentences are to follow his two-year mandatory sentence for the firearm conviction.

In his pleadings, Petitioner raises claims concerning the effectiveness of trial counsel.

For the reasons stated, the Court will deny the petition.  The Court also will decline to issue

Petitioner a certificate of appealability.

## II.  BACKGROUND

### A.  Substantive Facts

The Michigan Court of Appeals summarized the underlying facts of this case, which are

presumed correct on habeas review.  28 U.S.C. § 2254(e)(1); *see also Monroe v. Smith*, 197 F.

Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd*, 41 F. App'x 730 (6th Cir. 2002) (facts from the

Michigan Court of Appeals regarding the petitioner's conviction are presumed correct on habeas

review) (citations omitted).  The Court of Appeals stated:

> Defendant and his former girlfriend, Leah Amaya, lived together until
> their breakup in 2005, after which defendant worked in Louisiana. Amaya is the
> mother of defendant's son.  Amaya lives next door to Amy Leithauser and her
> boyfriend, David Clark, with whom she is also friends. Defendant and Clark also
> had a friendship, and Clark accompanied defendant to Louisiana but returned
> shortly thereafter.  Defendant returned to Michigan in November 2005.  After his
> return, defendant had frequent visitation with his son, but he and Amaya had a
> tumultuous relationship. According to Amaya, defendant was depressed and
> frequently threatened to harm himself because she would not reconcile with him.
>
> On December 23, 2005, defendant attempted unsuccessfully to arrange
> visitation for the holidays.  On December 24, 2005, beginning at approximately
> 2:00 a.m., defendant began leaving threatening voicemails. At approximately 3:00
> a.m., Amaya, who was staying at her grandmother's house, telephoned Leithauser
> to tell her that defendant was looking for her and their son and that he may come
> to their house.
>
> Leithauser testified that after receiving Amaya's warning call, she advised
> Clark and returned to sleep.  Between 3:30 and 4:00 a.m., Clark told Leithauser
> that defendant was in the house and directed her to call 911. Clark testified that
> defendant pulled into Amaya's driveway and got out of his truck with a shotgun
> that discharged once toward the ground as defendant was walking.  Clark then
> saw defendant walk up his driveway, open the screen door, punch out the
> window, reach in, and unlock the door. As defendant ran upstairs, Clark met him,

2

sprayed him with pepper spray, and a struggle ensued.  The two men fell down the stairs, with defendant still holding the shotgun.  Defendant punched Clark, pushed his thumb in his right eye, bit him, and choked him.  Clark yelled for Leithauser.

Leithauser testified that as she was dialing 911, she heard defendant yell threats to kill, and when she went downstairs, defendant was choking Clark. Leithauser knocked defendant off Clark, the three struggled briefly, and Leithauser and Clark took the shotgun.  Defendant demanded the shotgun so that he could kill Leithauser and Clark and then threatened to kill himself.  The telephone rang and defendant asked Leithauser if she had called the police.  When Leithauser answered affirmatively, defendant announced that he was leaving, went into the kitchen, picked up a knife, cut his throat and wrist with the knife, and left the premises.  Neighbors across the street observed defendant leave the house, and another male running after him, holding the shotgun, urging defendant to wait for an ambulance because he was going to bleed to death.  Defendant then left.

The police responded to a call at defendant's mother's house where they found defendant bleeding heavily from his wrists and losing blood. Defendant was transported to the hospital.  Defendant's mother gave testimony about defendant's history of mental illness and his prescribed medications.  She also testified that on December 24, 2005, he was not acting like himself.  Dr. Harold Sommerschield, a licensed psychologist, testified that he evaluated defendant and concluded that defendant had an adjustment disorder with depressed mood, and that defendant was depressed.  During the interview, defendant stated that he went to Amaya's house to arrange visitation with his son and, because Amaya was not home, he went to her friend's house next door.  He had a gun because he intended to kill himself, but left it outside, next door to Amaya's house.  Defendant stated that the next thing he remembered was being in the hospital and noticing that his arm was injured.  Dr. Sommerschield concluded that defendant was competent to stand trial and was not insane.

*People v. Carr*, No. 273778, 2008 WL 747081, at *1-2 (Mich. Ct. App. Mar.

20, 2008).

As stated, following a six-day trial, the jury found Petitioner guilty but mentally ill on all

charges.  He was sentenced as described.

3

**B.  Procedural Facts**

Following his sentencing, Petitioner filed a direct appeal with the Michigan Court of

Appeals, raising the same claims raised in this habeas petition.  On March 20, 2008, the Court of

Appeals affirmed his convictions and sentences.  *Carr*, 2008 WL 747081, at *5.

Petitioner then filed an application for leave to appeal the Court of Appeals's decision

with the Michigan Supreme Court, raising the same claims.  On July 29, 2008, the Michigan

Supreme Court denied his application.  *People v. Carr*, 482 Mich. 895, 753 N.W.2d 189 (2008)

(Table).

Petitioner neither filed a post-conviction motion with the state trial court nor a petition

for a writ of certiorari with the United States Supreme Court.  Rather, he filed this habeas

petition on July 23, 2009.

**III.  STANDARD OF REVIEW**

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to
any claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, as determined by the Supreme
Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the
facts in light of the evidence presented in the State court proceedings.

A decision of a state court is "contrary to" clearly established federal law if the state

court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law

or if the state court decides a case differently than the Supreme Court has on a set of materially

4

indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state[-]court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409; *see also Pinchon v. Myers*, 615 F.3d 631, 638-39 (6th Cir. 2010) (same). A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 410-11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, --- U.S. ---, ---, 130 S.Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)); *see also Nields v. Bradshaw*, 482 F.3d 442, 449 (6th Cir. 2007) (the AEDPA requires that the federal courts give a high degree of deference to factual determinations made by the state courts). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state[-]court's decision." *Harrington v. Richer*, --- U.S. ---, ---, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized that "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it

5

preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state[-]court's decision conflicts with" the Supreme Court's precedents. *Harrington*, --- U.S. at ---, 131 S.Ct. at 786. Indeed, "[s]ection 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)) (Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

And, as stated, a state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998). Moreover, review under section 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, --- U.S. ---, ---, 131 S.Ct. 1388, 1398 (2011).

With those standards in mind, the Court proceeds to address Petitioner's claims.

## IV.  DISCUSSION

### A.  Trial Counsel Not Ineffective

In his first habeas claim, Petitioner argues that trial counsel was ineffective because "[he] conced[ed] every element of every offense charged without [his] consent and for no conceivable reason." Pet. 2. In his second habeas claim, Petitioner further asserts that counsel was

6

ineffective because he did not present any medical testimony in support of Petitioner's defense of not guilty by reason of insanity.  *Id.*  And, in his third habeas claim, Petitioner repeats his first argument, that trial counsel was ineffective because he conceded his guilt and did not present a defense.  *Id.*  Respondent argues that these claims lack merit.  The Court agrees.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  *Id.* at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

As to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  *Strickland*, 466 U.S. at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.  The petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.  *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.  A reasonable probability is one that is

7

sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging

any claim of ineffectiveness must be whether

counsel's conduct so undermined the proper functioning of the adversarial process that the

[proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective-

assistance-of-counsel claims arising from state-criminal proceedings is quite limited on habeas

review due to the deference accorded trial attorneys and state-appellate courts reviewing their

performance. "The standards created by *Strickland* and [section] 2254(d) are both 'highly

deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, --- U.S. at -

--, 131 S.Ct. at 788 (internal and end citations omitted). "When [section] 2254(d) applies, the

question is not whether counsel's actions were reasonable. The question is whether there is any

reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id.* at 788.

Not specifically citing the *Strickland* standard, but rather citing to several Michigan cases

that expressly employed the *Strickland* standard, the Michigan Court of Appeals denied relief on

these claims.

### 1. Counsel did not concede guilt and fail to present a substantial defense

With respect to Petitioner's first claim, the Court of Appeals found that the record did not

support Petitioner's claims. Trial counsel argued that Petitioner did not have the requisite intent

to support the charges, but rather he suffered from a mental illness and only intended to harm

himself. Defense counsel's strategy is evident from the beginning of his opening statement, in

which he stated:

The evidence is going to show that even before this incident ever occurred [Petitioner] suffers from a mental condition.  That's what the evidence is going to show.

* * *

The evidence is going to show that even prior to this incident [Petitioner] was trying to take his own life a number of times.  That's what the evidence is going to show.

The evidence is going to show us that unfortunately on that evening that he went to his girlfriend's house not to harm anybody but himself.

The evidence is going to show maybe he wanted to make a statement and kill hisslef [sic] in front of his girlfriend and his kid.  I don't know.  But the evidence is going to show us that that was his intent, to take his own life.

* * *

They are not going to be able to show you any evidence where a glass pane window was broken and there's glass on the inside of the house. You have to use your common sense when you hear testimony come from that stand.

The evidence is clearly going to show that [Petitioner] was let in the house by David Clark.  That's what the evidence is going to show.

* * *

The evidence is further going to show that when he attempted to go up the stairs, that's when David Clark jumped him.  They fell back down the stairs, they had a scuffle, and Amy Leithauser then got into it.

And what happened was, the evidence is clearly gong to show, is that "Let me up, I'm going to finish this, I'm going to kill myself."  The evidence is going to show that [Petitioner] walked into the kitchen, got a knife, slit his throat and his wrist, and then attempted to drive to his parents' home.

* * *

The evidence is going to show that the only person that [Petitioner] ever tried to harm is himself.  That's what the evidence is going to show.

* * *

9

You don't have Home Invasion.  You don't have Assault With Intent to Commit Great Bodily Harm unless you're gonna find him guilty of trying to kill himself.  You're gonna find that there was a struggle, true enough, but the struggle was not to harm David Clark.  The struggle was all about harming himself.

* * *

The evidence is clearly going to show that this man, based upon his mental conditions, can't do things like the normal person, and in the end he tries not to harm anyone but himself.  He's not guilty of these crimes.  He's guilty of trying to take his own life.  And he's not charged with that, ladies and gentlemen.  That's what the evidence is clearly going to show.

Trial Tr. vol. I, 156-61 Aug. 8, 2006.

In addressing this claim, the Court of Appeals stated:

During the testimony, defense counsel vigorously challenged the pivotal issue of whether defendant intended to harm anyone other than himself.  Defense counsel continually questioned the prosecution witnesses regarding defendant's specific actions and words.  Defense counsel emphasized that defendant repeatedly threatened to kill himself and eventually slit his own wrist and throat before leaving Clark and Leithauser's house.  Defense counsel presented a responding police officer, who testified that neither Clark nor Leithauser stated that defendant threatened to kill them.  The officer further testified that both Clark and Leithauser stated that defendant wanted to harm himself and slit his own throat and wrist with a knife.  Defense counsel noted that Clark did not testify that defendant pointed a gun at either him or Leithauser, and that it was Clark who sprayed pepper spray on defendant and then jumped on him. When Clark testified that defendant choked him and stuck his thumb in his eye, defense counsel elicited on cross-examination that Clark had no injury to his eye and that the photograph depicting his neck injuries showed only some redness.  Defense counsel also elicited from a police identification technician that she saw only a "little scratch" and no bruising on Clark's neck.

Defense counsel also emphasized that Clark's neighbors, who were neutral witnesses, testified that as defendant was leaving, Clark ran after him, urging him to wait for an ambulance.  In his closing argument, defense counsel queried "why a person would ask anybody, 'Wait, don't leave, wait on the ambulance,' if [that person] broke into the house and had tried to kill [him] and [his] girlfriend . . . ."  Defense counsel asserted that defendant was mentally ill, and that the illness had risen to the level of insanity because he could not find his son.  During defense counsel cross-examination of Dr. Sommerscheild, the

10

> psychologist agreed with defense counsel's statement that the separation from a child can "send people off their rocker . . . ."

*Carr*, 2008 WL 747081, at *3 (citations omitted).

The Court finds that the Court of Appeals did not apply an unreasonable determination of the facts. For the reasons stated by the Court of Appeals and, given that the eyewitnesses placed Petitioner at the victim's home, it was sound strategy on counsel's part to argue that Petitioner did not have the necessary intent to commit the home invasion and the assault. It was a reasonable defense, albeit an ultimately unsuccessful one. There is nothing in the record to suggest that defense counsel's presentation of the arguments was unreasonable or prejudicial. The fact that defense counsel's strategy may not have worked does not constitute ineffective assistance of counsel.

With that, the Court finds that Petitioner's first habeas claim is without merit. The Court of Appeals's decision, with respect to this claim, was neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent. Habeas relief is not warranted.

### 2. Counsel not ineffective for failing to introduce medical testimony

In his second habeas claim, Petitioner argues that counsel was ineffective because he chose not to present any medical testimony in support of his insanity defense. That contention is untenable in light of the findings of the Court of Appeals in this case. In addressing this claim, the Court of Appeals found that it lacked merit. The Court agrees.

To establish an ineffective assistance of counsel claim based on a failure to call a witness, a defendant must affirmatively show what the missing evidence would have been and prove that

the witness' testimony would have produced a different result.  *See Malcum v. Burt*, 276 F. Supp. 2d 664, 679 (E.D. Mich. 2003) (internal citation omitted).

Here, the record demonstrates that defense counsel questioned Petitioner's mother and Amaya about his history of mental illness and his prescribed medications, and he thoroughly questioned Dr. Sommerschield, the prosecution's expert.  Defense counsel did not call a psychologist.  Rather, he chose to rely on Dr. Sommerschield's evaluation, Petitioner's medical history, and the facts of the case.  Petitioner did not assert any irregularity with the doctor's evaluation that required defense counsel to seek additional medical testimony.  Furthermore, Petitioner does not indicate what medical testimony should have been presented or that other supportive medical evidence even exists.

When defense counsel's case is not a solid one, as is the case here, the best strategy might be to say that there is too much doubt about the state's theory for a jury to convict.  Another advantage would be that the prosecution was prohibited from arguing that a defense expert's testimony is skewed in favor of the defense because the expert is being paid by the defense.  Those types of trial strategy cannot be second-guessed on appeal.  And, while in some cases "even an isolated error" can support an ineffective-assistance claim if it is "sufficiently egregious and prejudicial," *Murray v. Carrier*, 477 U.S. 478, 496 (1986), it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy.

Here, Petitioner's attorney represented him with vigor and conducted a skillful cross-examination of Dr. Sommerschield.  Petitioner's history of mental-health illness and treatment was not disputed and defense counsel presented ample evidence of how

12

Petitioner's mental health affected his behavior to challenge the element of intent to harm others. Obviously, the jury agreed, finding Petitioner mentally ill but guilty, thus demonstrating that defense counsel's strategy was effective. The Sixth Amendment guarantees only adequate assistance by counsel. It does not guarantee exemplary, or even good, counsel, and it does not guarantee an acquittal.

Having carefully reviewed the record, this Court cannot conclude that Petitioner has demonstrated that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Therefore, the Court finds that Petitioner's second habeas claim regarding his ineffective-assistance-of-counsel claim also is without merit.

### 3. Counsel not ineffective for conceding guilt and failing to present a defense

In regard to Petitioner's third habeas claim, that he was denied his right to a jury trial because counsel conceded his guilt and did not present a defense, the Court finds the claim to be without merit. This claim is nothing more than a reiteration of Petitioner's first two habeas claims. Therefore, for the reasons stated above, the Court finds that the Michigan Court of Appeals's decision regarding Petitioner's claims is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, or an unreasonable determination of the facts. He is not entitled to habeas relief with respect to his ineffective-assistance-of-counsel claims.

### B. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing

Section 2254 Proceedings, which was amended as of December 1, 2009, requires a district court to "issue or deny a [certificate of appealability] when it enters a final order adverse to the applicant . . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11, Rules Governing Section 2254 Proceedings.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997). To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotes and citations omitted).

The Court finds that reasonable jurists could debate its resolution of Petitioner's first claim. Therefore, the Court grants a certificate of appealability.

## V. CONCLUSION

IT IS ORDERED that the petition for a writ of habeas corpus is DENIED.

IT IS FURTHER ORDERED that the Court grants a certificate of appealability as to Petitioner's first claim.

S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated: July 11, 2012

14

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 12, 2012, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Assistant